*32 Opinion of
the Court.
IT appears that Daniel Weller had bought a negro boy of Burton, for $300, a moiety of which he paid when the purchase was made, and for the other moiety he gave his obligation, with John Wellers his security, payable at a future day; and that on the obligation Burton brought suit at law, and obtained judgment. On a charge of fraud, this suit was then commenced by the Wellers, to obtain an injunction of the judgment and restoration of the money which Daniel Weller had paid, with such other relief as to equity should belong. The principal charges in the bill are as follows: That the defendant was informed by your orator, that he *33 stood in need of a good, sensible, active and healthy boy; and the said defendant did represent to your orator, that the boy which he was about to sell him was healthy, active and sensible; and your orator, relying upon the defendant’s statement as to the qualities of the said negro, did purchase the same at the price aforesaid: That immediately after he received the said negro, he discovered that the said negro labored under an old and inveterate complaint in his legs, which was well known to the defendant, which he artfully concealed from your orator, and that the said negro afterwards died of the same complaint.
Facts & circumstances from which a court of chancery ought to infer that the seller of a slave knew that he was unsound.
Repeated declarations of the purchaser after the purchase, that the slave was in good health at the time of the purchase, will not prevent his vacating the contract, on clear proof that the slave was in fact diseased.
The defendant, in his answer, does not expressly deny these allegations; but confesses, that at the time the complainant, Daniel, was about to purchase said negro, he told him he was sound, as far as he knew; and by way of avoidance, he denies that he knew, of his own knowledge, of any infirmity in the legs of said negro boy, under which he labored at the time of sale, or at any time previous to it
It might possibly be true, that Burton did not know, of his own knowledge, of any infirmity in the legs of the negro; but he does not deny that he had been informed of the fact, or that he did not believe it; and it is proved by Henry Wisehart, that, happening at the house of Daniel Weller, he saw a Mr. Powell and the defendant, Robert Burton, there. Weller asked, if they knew where he could purchase a likely negro boy? Mr. Powell said, no. In a few minutes, Burton said that he knew of one. Mr. Powell said to Mr. Burton, “ not that sickly one?” Burton winked, or nodded to Mr. Powell. The conversation went on, and Weller observed, he would not buy, nor have one, unless he was a sound, healthy, and active boy. Mr. Burton said to Weller, the negro boy I mean, is as sound, well, healthy a boy, as you will find one in a thousand.
From the remaining parts of this deposition, and others, which are too lengthy to be repeated, there is no doubt but the negro boy in question, was the one alluded to; and they further prove that Burton practised a meditated fraud or deception on Weller. Indeed, when Weller was receiving the negro from Burton, and paying him a part of the price agreed on, it is proved that Weller asked Burton, is this a sound negro? The said Burton answered, as far as I know *34 It is, however, also proved, that it was generally supposed in the neighborhood, that he was not a sound boy; that he had before been several times sold in that part of the country, on account of a sore shin or leg, and his ill state of health; and that Burton resided in the same family with the boy, when he had sold him.
It need scarcely be observed, that Burton, in his answer, attempts to impress the belief that the boy was not unsound or unhealthy when he sold him to Weller, or that Weller had waived his right to redress, by asserting that the complainant, Daniel, or any person for him, never mentioned to this defendant, at the time of executing the said bond, or at any time before, that the said negro boy was either unsound or unhealthy, although the said Daniel had the boy in his possession for four or five months previous to the time of executing the said bond. But admitting this to be true, it may as fairly be presumed, he was then ignorant that he could prove the fraud, or that he could obtain redress, as that he would knowingly abandon his right. Indeed, it is in testimony, that for a considerable length of time after he made the purchase, when some of his acquaintances repeatedly suggested that they thought the negro unsound, or in an ill state of health, he seemed unwilling to believe it; nor does he appear to have been fully convinced of the fact, until shortly before the death of the negro, when he took him to a doctor. This may prove that Weller was very credulous or unsuspicious, but cannot destroy the abundant and undoubted evidence that the negro had long been languishing under diseases which proved mortal; and even if Burton had not really known or been informed of the negro’s maladies, still, in equity and good conscience, he is responsible to Weller, for having induced him to believe the negro was sound and healthy.
The court below, conceiving that the charges in the bill were well supported, has decreed and ordered, that the complainant’s injunction against the judgment at common law, obtained by Burton against them, Daniel Weller and John Weller, be made perpetual; and inasmuch as it appears satisfactorily proved to the court, that the said Burton was guilty of fraud in the sale of the negro mentioned in the complainant’s bill, and cannot, in conscience and justice, withhold the $150 paid to him by the complainant, Daniel, at the time of the *35 delivery of the negro, it is further decreed and ordered, that the said defendant do pay the complainant, Daniel, the aforesaid sum of $150, with interest thereon at six per centum per annum, from the first day of March 1802, (being the day of payment,) until paid; and it is further ordered, that he pay unto the said complainants their costs in the action at common law and in this suit.
After a careful examination of the record of the whole case, this court is of opinion the decree is correct and proper.—Affirmed.